# IN THE COURT OF APPEALS OF IOWA

No. 20-0243
Filed August 4, 2021

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**JACOB HAZE HECKETHORN,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Wapello County, Crystal S. Cronk, Judge.

Jacob Heckethorn appeals his convictions for murder in the second degree and assault with intent to inflict serious injury. **AFFIRMED.**

Peter Stiefel, Victor, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

Heard by Vaitheswaran, P.J., Schumacher, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**GAMBLE, Senior Judge.**

A fight broke out amongst a group of people outside Dustin Greene's home. Jacob Heckethorn broke up the altercation by firing a rifle into the air. He shot at Greene, and then he shot and killed William Shettlesworth, who was standing nearby. Heckethorn was charged with murder in the first degree and attempt to commit murder. Heckethorn raised the defense of justification. The matter proceeded to trial, and the jury found him guilty of murder in the second degree and assault with intent to inflict serious injury. On appeal, Heckethorn challenges the sufficiency of the evidence to support the jury's verdict and the jury instructions on justification. Facts will be set forth below as relevant to the issues raised.

## I. Sufficiency of the Evidence

The district court instructed the jury the State had to prove the following elements of murder in the second degree:

> 1. On or about August 23, 2018, the defendant shot William Shettlesworth with a rifle.
> 2. William Shettlesworth died as a result of being shot.
> 3. The defendant acted with malice aforethought as defined in Instruction No. 21.
> 4. The defendant's actions were not justified.

The jury was instructed the State had to prove the following elements of assault with intent to inflict serious injury:

> 1. On or about August 23, 2018, the defendant did either an act which was intended to cause pain or injury or to place Dustin Greene in fear of an immediate physical contact which would have been painful or injurious to Dustin Greene.
> 2. The defendant had the apparent ability to do the act.
> 3. The act was done with the specific intent to cause a serious injury.
> 4. The defendant's actions were not justified.

The jury also received instructions on justification. Instruction 39 stated:

The defendant claims he acted with justification.

A person may use reasonable force to prevent injury to himself or others. The use of this force is known as justification.

Reasonable force is only the amount of force a reasonable person would find necessary to use under the circumstances to prevent death or injury.

A person can use deadly force against another if it is reasonable to believe that such force is necessary to avoid injury or risk to one's life or safety [or] the life or safety of another, or it is reasonable to believe that such force is necessary to resist a like force or threat.

A person who is not engaged in illegal activity has no duty to retreat from any place where the person is lawfully present before using force.

The State must prove the defendant was not acting with justification.

Instruction 40 stated:

A person is justified in using reasonable force, including deadly force, if he reasonably believes the force is necessary to defend himself or another from actual or any imminent use of unlawful force.

If the State has proven any one of the following elements, the defendant was not justified:

1. The Defendant started or continued the incident which resulted in injury or death.

2. The defendant provoked the use of force against himself with the intent to use such force as an excuse to inflict injury on another person.

3. The defendant did not believe he was in imminent danger of death or injury and the use of force was not necessary to save him or others.

4. The defendant did not have reasonable grounds for the belief.

5. The force used by the defendant was unreasonable.

Instruction 41 stated:

The term "deadly force" means any of the following:

1. Force used for the purpose of causing a serious injury.

2. Force which the defendant knows or reasonably should know will create a strong probability that serious injury will result.

3. Discharging a firearm in the direction of someone, knowing they are present, even though there is no intent to cause a serious injury.

Instruction 42 stated:

> The defendant was not required to act with perfect judgment. However, he was required to act with the care and caution a reasonable person would have used under the circumstances which existed at that time.
>
> If in the defendant's mind the need to use force to prevent the willful injury of himself or another was actual, real, imminent or unavoidable, even though it did not exist, that is sufficient if a reasonable person would have seen it in the same light.
>
> A person may be wrong in the estimation of the danger or the force necessary to repel the danger as long as there is a reasonable basis for the belief of the person and the person acts reasonably in the response to that belief.

And instruction 43 stated:

> The defendant claims danger existed. You are to consider the danger or apparent danger from the viewpoint of a reasonable person under the circumstances which existed at that time.
>
> It is not necessary that there was actual danger, but the defendant must have acted in an honest and sincere belief that the danger actually existed.
>
> Apparent danger with knowledge that no real danger existed is no excuse for using force.

Heckethorn challenges the sufficiency of the evidence to sustain his convictions, arguing "his actions were justified." We review this claim for correction of legal error. *State v. Schiebout*, 944 N.W.2d 666, 670 (Iowa 2020). "We will uphold the verdict on a sufficiency-of-evidence claim if substantial evidence supports it." *Id.* "Evidence is substantial 'if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *State v. Trane*, 934 N.W.2d 447, 455 (Iowa 2019)).

From the evidence presented at trial, the jury could reasonably have found the following facts. On August 23, 2019, Heckethorn spent the day using methamphetamine, driving around, shooting guns, and hanging out with friends, including Erik Fountain. The group possessed several firearms including an AR-

15 rifle. Heckethorn kept the loaded and unsheathed AR-15 with him in the car. Heckethorn and Fountain used "a lot" of methamphetamine that day and were "messed up."

At some point during the day, Sally Brownlee contacted Fountain through one of the women in the car and informed him that his ex-girlfriend, Coleena Sparks, was next door at Greene's house. Brownlee suggested that Fountain come visit Sparks, who had just gotten out of jail. Fountain and Greene had previously "argu[ed] over" who was in a relationship with Sparks, and Greene had told Fountain to "leave her alone" and to "stay away." Nevertheless, that evening, Fountain asked the group to stop by Brownlee's house so he could see Sparks and bring her doughnuts and chocolate milk.

Greene saw Fountain arrive and went next door to Brownlee's porch to "confront" him. A fist fight broke out between Greene and Fountain. Sparks and two women from Heckethorn's group also joined the scuffle on the porch. A neighbor saw Greene hit Fountain over the head with a bottle, but Fountain did not remember being hit with a bottle.

Heckethorn retrieved the AR-15 from the front passenger side of the car where he had been riding. Heckethorn fired a shot into the air and yelled, "Have you ever seen an AR-15 before?" When Heckethorn fired the gun, most of the group scattered. While still standing by the car, Heckethorn pointed the gun at Greene's house, and a neighbor yelled, "Gun!" as Heckethorn fired. Greene and Sparks ran back to Greene's house. Heckethorn "fired a couple shots at [Greene]," and a round hit near Greene as he ran into his house for cover. A neighbor testified, "[T]hen after that, obviously there's nobody out, hardly, and then

[Heckethorn] just kind of looked back and forth" across the yard and noticed Shettlesworth standing in the yard near the corner of the house. "[Shettlesworth] stepped back to the side, and said, 'I have nothing to do with this.' And then he held his hands up and said, 'Don't shoot! Don't shoot!' And that's when [Heckethorn] shot him." Heckethorn shot at least two rounds at Shettlesworth, one of which was fatal.

Heckethorn and his group fled the scene in their car. First they went to Heckethorn's cousin's house. While they were at his cousin's house, Heckethorn told Fountain, "I think I just shot somebody . . . ." Then they drove to Heckethorn's mother's house, where Heckethorn put the AR-15 in a bedroom closet. When police interviewed Heckethorn, he initially said that he had been at his mother's house all day and told them "there was no firearms inside the residence."

Heckethorn testified at trial. He stated he and Shettlesworth had been fighting on the porch. He further testified that he retrieved the gun from the car, stood by the curb, and shot at Greene's house to "scare them, keep them in the house so [he] could get his friends." According to Heckethorn, after his initial shot, "I kind of expected them to scatter, and they hadn't really done that as quickly as I would have thought." Although most people had run for cover, Heckethorn stated Shettlesworth started to "com[e] at me, like, straight towards me" "from about the porch," and "I had shot at him." Heckethorn testified that shooting Shettlesworth "was not my—my main goal, so I wasn't really paying attention," explaining, "Because when I lost sight of him, he wasn't charging at me anymore. He had, you know, wandered." When asked if he believed he had done what was

necessary to protect himself and his friends, Heckethorn responded, "Yes, to an extent."

Upon our review, we believe the record before us furnishes substantial proof from which a jury could find, beyond a reasonable doubt, that Heckethorn's reliance on the defense of justification was unfounded. *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) (noting the jury is free to believe or disbelieve the evidence and to give weight to the evidence as it sees fit). The State refuted the defense with proof that Heckethorn made the decision to retrieve an AR-15 from the car to "scare" unarmed individuals and that he used unreasonable force by aiming and shooting the gun at Greene through the front of his house and by shooting Shettlesworth who was also unarmed. On cross-examination, Heckethorn agreed with the prosecutor's question, "Well, after you shot off the gun, even though they may have been initially stunned and not immediately started running like racers out of the gate, most of the group scattered, didn't they?" The fact that Heckethorn realized most of the group—including Greene—had run for cover demonstrates they were no threat to him or his friends and Heckethorn had no reasonable basis to believe they were. Substantial evidence supports a finding that Shettlesworth, who had been watching the fight, emerged and told Heckethorn, "I am not part of this." Shettlesworth put his hands above his head and said, "Don't shoot. Don't shoot." And then Heckethorn shot him. Finally, Heckethorn's own testimony that Shettlesworth had "wandered" and "wasn't charging at [him] anymore" before he continued shooting substantially weakens any claimed belief that Shettlesworth presented imminent danger to himself or his friends. After the shooting, Heckethorn fled the scene, concealed the AR-15 in a

closet at his mother's house, and told the police he was not involved in the shooting. Heckethorn's behavior after the incident demonstrates his consciousness of guilt. *Cf. State v. Wilson*, 878 N.W.2d 203, 214 (Iowa 2016) (discussing an act of flight and consciousness of guilt); *State v. Cox*, 500 N.W.2d 23, 25 (Iowa 1993) (referencing fabrication as indication of a consciousness of guilt); *State v. Jonas*, No. 15-1560, 2017 WL 706204, at * (Iowa Ct. App. Feb. 22, 2017) (noting the defendant failed to "call an ambulance after he left the scene even though he knew the victim was alive," "avoided the police . . . by lying to them throughout the initial interviews," and "disposed of his weapon [and] his clothes," and concluding his "actions were inconsistent with someone who was acting in self-defense").

We conclude there is sufficient evidence in the record to show the State met its burden to disprove Heckethorn's defense of justification, and we affirm on this issue. Substantial evidence supports Heckethorn's convictions for murder in the second degree and assault with intent to inflict serious injury.

## II. Jury Instruction 40

Heckethorn contends the district court "erred by overruling [his] objection to the inclusion of the language 'or continued' in jury instruction 40 and the record does not affirmatively establish that the error did not prejudice [him]." "We review jury instruction challenges for the correction of errors at law to determine whether the challenged instruction correctly states the law." *State v. Zacarias*, 958 N.W.2d 573, 579–80 (Iowa 2021). "Trial courts have a rather broad discretion in the language that may be chosen to convey a particular idea to the jury." *State v. Tipton*, 897 N.W.2d 653, 696 (Iowa 2017) (citation omitted). But "[e]rroneous jury

instructions are prejudicial and require reversal when they 'mislead the jury or materially misstate the law.'" *Zacarias*, 958 N.W.2d at 580 (citations omitted).

As set forth above, instruction 40 provided that if the State proved any of the following elements, Heckethorn was not justified:

> 1. The Defendant started *or continued* the incident which resulted in injury or death.
> 2. The defendant provoked the use of force against himself with the intent to use such force as an excuse to inflict injury on another person.
> 3. The defendant did not believe he was in imminent danger of death or injury and the use of force was not necessary to save him or others.
> 4. The defendant did not have reasonable grounds for the belief.
> 5. The force used by the defendant was unreasonable.

(Emphasis added.) Heckethorn also challenges the use of instruction 39 in conjunction with instruction 40. Instruction 39 stated:

> The defendant claims he acted with justification.
> A person may use reasonable force to prevent injury to himself or others. The use of this force is known as justification.
> Reasonable force is only the amount of force a reasonable person would find necessary to use under the circumstances to prevent death or injury.
> A person can use deadly force against another if it is reasonable to believe that such force is necessary to avoid injury or risk to one's life or safety [or] the life or safety of another, or it is reasonable to believe that such force is necessary to resist a like force or threat.
> *A person who is not engaged in illegal activity has no duty to retreat from any place where the person is lawfully present before using force.*
> The State must prove the defendant was not acting with justification.

(Emphasis added.)

Heckethorn points to Iowa Code section 704.6 (2018), which sets forth the circumstances where "[t]he defense of justification is not available," *see* Iowa Code

§ 704.6(1)–(3), and he argues "none of the circumstances include the defendant continuing the incident which resulted in injury or death." He also points to revisions to section 704.1, including "the stand-your-ground provision, which eliminates any duty to retreat before using reasonable force if a person is not engaged in illegal activity." *See State v. Fordyce*, 940 N.W.2d 419, 427 (Iowa 2020). Heckethorn argues, "The elimination of that duty must also lead to the elimination of the 'or continued' language in instruction 40 in cases like the present one."

But the legislature did not change section 704.6, and courts have continued to use justification instructions containing the "or continued" language after the stand-your-ground amendments to section 704.1. *See State v. Baltazar*, 935 N.W.2d 862, 867 (Iowa 2019) (addressing an argument relating to a jury instruction regarding section 704.1(3)'s stand-your-ground justification that also included the "or continued" language); *State v. Davis*, No. 19-0929, 2021 WL 616148, at *7–8 (Iowa Ct. App. Feb. 17, 2021) (rejecting challenge to jury instruction using same language); *State v. Van Hemert*, No. 19-1273, 2020 WL 5944441, at *4–5 (Iowa Ct. App. Oct. 7, 2020) (rejecting claim of insufficient evidence on lack of justification where same jury instruction was given); *see generally Fordyce*, 940 N.W.2d at 427 (affirming an instruction including the "or continued" language, although prior to the effective date of the section 704.1 amendments).

Here, as noted, instruction 39 included the stand-your-ground language, stating in part: "A person who is not engaged in illegal activity has no duty to retreat from any place where the person is lawfully present before using force." Heckethorn argues, "The inclusion of the 'or continued' language in instruction 40

with the 'no duty to retreat' language in instruction 39 creates a set of instructions that is confusing and misleading on the justification law."[1]

Under the circumstances of this case, we disagree. In *Fordyce*, the defendant challenged the court's failure to apply the stand-your-ground provision in analyzing his justification defense. 940 N.W.2d at 427. The supreme court found that because "Iowa did not have the stand-your-ground provision in effect during the 2015 shooting, [it did] not apply to Fordyce's case." *Id.* The court affirmed Fordyce's conviction, finding he "continued the incident which resulted in death." *Id.* at 422, 425–27 (relying on the "or continued" language from the uniform instruction). Although the court did not apply the stand-your-ground provision, it nonetheless rejected Fordyce's claim, observing, "Given our holding that Fordyce continued the incident which resulted in Donald's death, we need not consider whether the State proved beyond a reasonable doubt that Fordyce had an alternative course of action available." *Id.* at 427.

The court's discussion in *Fordyce* bolsters the State's claim that the instructions in this case were not erroneous. The district court had considerable discretion in the language it chose to convey the defense of justification to the jury. *See Tipton*, 897 N.W.2d at 696. Here, in response to Heckethorn's defense, the district court submitted five instructions on justification to the jury, as set forth above. "We do not consider an erroneous jury instruction in isolation, but look at the jury instructions as a whole." *Davis*, 2021 WL 616148, at *5 (quoting *State v.*

---

[1] We note that instruction 39 was submitted to the jury without objection. *See State v. Banes*, 910 N.W.2d 634, 639–40 (Iowa Ct. App. 2018) (noting that where the jury was instructed without objection, the jury instruction becomes law of the case).

*Murray*, 796 N.W.2d 907, 908 (Iowa 2011)).  These instructions, read together, properly convey the defense of justification.  *See Fordyce*, 940 N.W.2d at 425 ("Justification is a statutory defense permitting a person to use reasonable force, including deadly [force], if that person reasonably believes the force used was necessary to defend himself or [herself] or another from any imminent use of unlawful force.").

Moreover, we further observe "stand your ground" does not apply in Heckethorn's situation.  Iowa Code section 704.1(3) provides, "A person who is not engaged in illegal activity has no duty to retreat any place where the person is lawfully present before using force as specified in this chapter."  The jury could reasonably conclude Heckethorn had a duty to retreat because he was engaged in illegal activity.  At the time of trial, Iowa Code section 724.4(1) provided, with statutory exceptions inapplicable here, it is illegal for a person to go armed with a loaded firearm of any kind within the limits of a city.[2]  We have said that "[f]or purposes of this statute, going armed includes 'when an occupant of a vehicle consciously and deliberately keeps . . . any loaded firearm where it is readily accessible.'"  *State v. Mendez*, No. 18-0442, 2019 WL 1752660, at *3 (Iowa Ct. App. Apr. 17, 2019) (quoting *State v. Alexander*, 322 N.W.2d 71, 72 (Iowa 1982)).  Substantial evidence establishes that Heckethorn arrived at the scene within the city limits in a vehicle carrying a loaded AR-15, retrieved the AR-15 from his seat in the vehicle, and fired a shot from the AR-15 in order to scare people.  Under

---

[2] Effective July 1, 2021, the legislature amended section 724.4 by eliminating the crime of carrying weapons and replacing it with the crime of use of a dangerous weapon in the commission of a crime.  *See* 2021 Iowa Acts ch. 35, § 9.

section 704.1(3), this illegal activity negated the stand-your-ground law and Heckethorn had a duty to retreat. *Cf. Baltazar*, 935 N.W.2d at 870–71 (finding, "at the very least, [the defendant] was engaged in illegal activity by carrying his handgun in public without a permit" and his "conduct was likely outside the limits of a valid permit and was likely a violation of other criminal statutes" and concluding "the record established [the defendant] engaged in an illegal activity that disqualified him from asserting his justification"); *see* Iowa Code § 724.4(1) (carrying weapons), *see also id.* § 708.1(2)(c) (assault by pointing or displaying a firearm)); *Fordyce*, 940 N.W.2d at 427. Because there was substantial evidence of Heckethorn's illegal activity, the district court properly instructed the jury on his duty to retreat in instruction 39.

Reading the "or continued" language of instruction 40 together with the "duty to retreat" of instruction 39, we conclude the district court did not give confusing or misleading instructions as Heckethorn asserts. Because substantial evidence could support a finding Heckethorn had a duty to retreat, the district court properly instructed the jury it could find he was not justified if the state proved he started or continued the incident. When Heckethorn fired the gun in the air and yelled, "Have you ever seen an AR-15 before?" the fight broke up and the group scattered. At that point, the threat was over. The jury could reasonably find Heckethorn was not justified, because instead of retreating, he continued the incident by shooting at Greene and Shettlesworth. *See Jonas*, 2017 WL 706204, at *4 ("We believe the jury in the present case could also rationally conclude that Jonas's actions surrounding the victim's death were consistent with the actions of someone who was able to retreat, or someone who continued the incident after the threat

ended.").   Therefore, it was not error for the district court to include the "or continued" language in instruction 40.

The district court based instruction 40 upon the former model instruction 400.2 of the Iowa State Bar Association.  At the time of trial, model instruction 400.2 was consistent with instructions approved by appellate courts.  *See*, *e.g.*, *State v. Winfrey*, No. 00-307, 2001 WL 725439, at *2 (Iowa Ct. App. June 29, 2001) (finding no error in submission of jury instruction identical to the prior Uniform Criminal Jury Instruction 400.2).  While they do not bind us, "we are slow to disapprove of the uniform jury instructions."  *State v. Booth-Harris*, 942 N.W.2d 562, 580 (Iowa 2020) (citation omitted).  Under the circumstances of this case, we see no reason to disapprove of the model instruction in use at the time of this trial. *See State v. Chivalan*, No. 20-0356, 2021 WL 1662200, at *3 (Iowa Ct. App. Apr. 28, 2021).

The fact the bar association approved changes to the uniform instruction in June 2020 removing the "or continued" language does not establish that the instructions used in this trial were error.[3]  *See Booth-Harris*, 942 N.W.2d at 581

---

[3] The amended uniform instruction provides:

> If any of the following is true, the defendant's use of force was not justified:
>
> 1. The defendant did not have a reasonable belief that it was necessary to use force to prevent an injury or loss.
>
> 2. The defendant used unreasonable force under the circumstances.
>
> 3. The defendant was participating in [name of forcible felony]* [a riot] [a duel].
>
> 4. The defendant was [not lawfully present] [engaged in illegal activity]** in the place where [he] [she] used force, [he] [she] made no effort to retreat, and retreat was a reasonable alternative to using force.

("Of course, the ISBA Jury Instructions Committee is welcome to revisit Instruction [400.2] and recommend for the ISBA Board of Governors to adopt or decline.' [T]he court is not required to give any particular form of an instruction; rather, the court must merely give instructions that fairly state the law as applied to the facts of the case.'" (citations omitted)). We express no opinion on the validity of the new model instruction. We hold instruction 40 fairly stated the law as applied to the facts of this case. Upon our review, we do not find the district court erred in submitting instruction 40 to the jury.

The State further argues that even if there was error in giving this instruction, "any error here was harmless."[4] "In order for a constitutional error to

---

If the State has proved any of these beyond a reasonable doubt, the defendant's use of force was not justified.

*See* Iowa State Bar Ass'n, Iowa Criminal Jury Instructions 400.3 (2020).

[4] The State, citing Iowa Code section 814.28 (Supp. 2019), also contends, "To the extent the defendant complains that, because it is unclear which of the disqualifiers the jury found, this was a general verdict, the Court lacks authority to grant relief on that basis." *Compare* Iowa Code § 814.28 ("If the jury returns a general verdict, an appellate court shall not set aside or reverse such a verdict on the basis of a defective or insufficient theory if one or more of the theories presented and described in the complaint, information, indictment, or jury instruction is sufficient to sustain the verdict on at least one count."), *with State v. Stallings*, 541 N.W.2d 855, 858 (Iowa 1995) ("Although the jury found Stallings' use of deadly force was not justified, we do not know if the jury's verdict was based upon proof that the force used by him was unreasonable or upon proof of one of the other alternate elements included in the court's instruction patterned after I[owa] Criminal Jury Instruction[] 400.2. Because of the court's failure to fully and fairly instruct on the use of deadly force, we must reverse and remand for retrial. A complete instruction on reasonable force is essential for a complete statement of the law.").

Heckethorn responds, in his reply brief, that section 814.28 "violates the Iowa Constitution and cannot apply to this case" and raises various claims relating to section 814.28. Because Heckethorn failed to raise these issues in his original brief, they are not preserved for our review. *See Zacarias*, 958 N.W.2d at 581 ("We generally do not consider issues raised for the first time in a reply brief."); *State v. Olsen*, 794 N.W.2d 285, 287 (Iowa 2011) (same); *Sun Valley Iowa Lake Ass'n v. Anderson*, 551 N.W.2d 621, 642 (Iowa 1996) ("Parties cannot assert an

be harmless, the court must be able to declare it harmless beyond a reasonable doubt." *State v. Gibbs*, 941 N.W.2d 888, 900 (Iowa 2020) (citations omitted). Here, the jury could have easily found the State proved Heckethorn did not reasonably believe he or others were in imminent danger and that he did not use reasonable force in response to the perceived danger. Multiple witnesses described Heckethorn's location "by the car" and stated he was not involved in the group of people fighting on the porch. Fountain, whom Heckethorn testified he was defending, stated he did not take "too many" hits and "[w]alked out without a scratch" from the fight. And Fountain testified that "everyone stopped what they were doing" when Heckethorn's first shots were fired. Although Heckethorn testified Shettlesworth "started to run at [him]," multiple other witnesses testified Shettlesworth "put both hands above his head" and said "I'm not part of this" and "Don't shoot!" at the time Heckethorn shot him. Heckethorn acknowledged Shettlesworth had "wandered" and "wasn't charging at [him] anymore" after Heckethorn shot at him. He further admitted his actions were only necessary "to an extent." In sum, "here any error was harmless beyond a reasonable doubt because the evidence of guilt [against Heckethorn] was so strong and that of justification was so weak." *See id*.

Upon our review of the issues before us, we affirm Heckethorn's convictions for murder in the second degree and assault with intent to inflict serious injury.

**AFFIRMED.**

---

issue for the first time in a reply brief. When they do, this court will not consider the issue." (citation omitted)).